UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONNIE DORAINE ALDRIDGE,

                     Plaintiff,      **No. 6:14-cv-06635(MAT)**
                                                    **DECISION AND ORDER**
       -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                     Defendant.
_____

## I. Introduction

Connie Doraine Aldridge "Plaintiff"), represented by counsel brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). The parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court grants Plaintiff's motion, which requests reversal of the Commissioner's decision and remand for further administrative proceedings.

## II. Plaintiff's DIB Application and the ALJ's Decision

On May 10, 2011, Plaintiff filed an application for DIB, alleging disability beginning February 26, 2011, due to depression,

a hernia sustained on the job, and back pain. T.51, 165.[1] Plaintiff's application was denied on March 21, 2012. A hearing was conducted via videoconference by Administrative Law Judge Stanley Chin ("the ALJ") on October 16, 2012, at which Plaintiff and a vocational expert ("the VE") testified. T.1-29.

On November 30, 2012, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. T.51-60. The ALJ applied the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 1520(a) At the first step, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2015, and that she has not engaged in substantial gainful activity since February 26, 2011, the alleged onset date. T.53.

At step two, the ALJ found that Plaintiff has "severe" impairments of recurrent abdominal hernia, obesity, myofascial lumbar strain, and major depressive disorder, which all were diagnosed by acceptable medical sources and which cause more than minimal effects of Plaintiff's ability to perform basic work-related activities. T.53.

At step three, the ALJ found that Plaintiff's major depressive disorder does not meet or medically equal Listing 12.04 (Affective Disorders). T.54. The ALJ determined that Plaintiff has "mild"

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

restrictions in activities of daily living and in social functioning, "moderate" restrictions in maintaining concentration, persistence or pace, and had not experienced repeated episodes of decompensation of extended duration. T.54-55. The ALJ did not specifically discuss any other listed impairments.

The ALJ proceeded to find that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except [she] can only lift/carry up to 20 pounds occasionally and [sic] frequently" and "could stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks." T.55. The ALJ noted that Plaintiff needs to be able to alternate sitting and standing at will. Id. She never can climb ladders, ropes, or scaffolds but occasionally can climb ramps or stairs, frequently balance, and occasionally stoop, kneel, crouch, and crawl. The ALJ limited her to simple, routine, and repetitive tasks performed in a work environment without fast-paced production requirements, and involving only simple work-related decisions and routine workplace changes. T.55.

At step four, the ALJ noted that Plaintiff had past relevant work as a hand packager (medium and unskilled), data entry clerk (sedentary and semi-skilled), caterer's helper (light and unskilled), security guard (light and semi-skilled), and food sales clerk (light and semi-skilled). See T.23-24. The VE testified at the hearing that a person with the above-described RFC would be

precluded from performing any of these jobs, and therefore Plaintiff is unable to perform her past relevant work. T.58. On the onset date, Plaintiff was 49 years-old and a "younger individual"; however, she changed age category to "closely approaching advanced age" because her 50th birthday occurred during the pendency of the administrative proceedings.

At step five, the ALJ found that considering her age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy. Because Plaintiff's RFC was less than the ability to perform the full range of light unskilled work, the ALJ called a VE to determine to what extent the occupational base was eroded by Plaintiff's additional limitations. Based on the VE's testimony, the ALJ found that Plaintiff could perform the requirements of representative occupations such as addresser (sedentary, unskilled, SVP 2); order clerk (sedentary, unskilled, SVP 2); and call out operator (sedentary, unskilled, SVP 2). T.59. The ALJ noted that even if he reduced Plaintiff's lifting and carrying restriction to 10 pounds, which is at the less-than-light exertional range, the VE still found a significant number of jobs that Plaintiff could perform. Id. Accordingly, the ALJ entered a finding of "not disabled."

**IV.  The Appeals Council's Decision**

On July 10, 2014, the Appeals Council ("AC") granted Plaintiff's request for review. T.33-36. On September 4, 2014, the

AC adopted the ALJ's statements regarding the law, the issues in the case, the evidentiary facts, and the conclusion that Plaintiff was not disabled, that is, the AC adopted the ALJ's findings at steps one, two, three, and four. However, the Appeals Council did not agree with the ALJ's step-five finding regarding the jobs that Plaintiff was able to perform in the national economy. T.34. The AC noted that the jobs listed by the ALJ in his decision were all sedentary-level. Based upon its review of the hearing transcript, the AC stated that the VE also had testified that Plaintiff also was able to perform representative occupations "under a hypothetical situation which considered a limitation to light exertion, which is consistent with the residual functional capacity in the hearing decision." T.34. Therefore, the AC found, Plaintiff is not disabled based on the VE's testimony that she could perform the representative occupations of collator operator, laundry sorter, and photocopy machine operator. T.34.

V.  **Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such

findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**VI. Discussion**

   **A. Failure to Afford Controlling Weight to Treating Physician's Opinion (Plaintiff's Points I and II)**

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the opinions of treating physician and surgeon Dr. Rabih Salloum, even though he provided the majority of Plaintiff's treatment and his opinion is consistent with his own treatment notes, the opinion of consultative examiner Dr. Harbindor Toor, and the other medical evidence in the record. Since the AC adopted the ALJ's RFC finding, Plaintiff argues, this error also was accepted as part of the Commissioner's final decision.

   **1. Dr. Salloum's Opinions**

Dr. Salloum performed a laparoscopic incisional hernia repair

on Plaintiff's non-reducible ventral hernia on April 1, 2010.[2] On September 10, 2010, Plaintiff reported to Dr. Salloum that the bulge in her abdomen had increased in size and was causing her abdomen to swell. T.205. Dr. Salloum observed that Plaintiff had a reducible bulge in her upper abdomen that was "suspicious for recurrence" of a hernia. Dr. Salloum scheduled Plaintiff for an abdominal CT scan and indicated that she would be able to work within a ten pound weight restriction. T.205, The September 24, 2010, CT scan showed a residual or recurrent supraumbilical ventral hernia. T.203. On December 10, 2010, Dr. Salloum indicated that it would "be very useful for her to try to lose some weight[;] if she is successful then she would reduce the recurrence rate markedly." T.204. Dr. Salloum recommended a re-operation and stated that Plaintiff required a lifting restriction of nothing heavier than ten pounds. Id. On February 8, 2011, and February 11, 2011, Dr. Salloum again indicated that Plaintiff was able to work an unlimited number of hours with a weight restriction of ten pounds. T.258, 216. About a year later, on June 22, 2012, Plaintiff returned to Dr. Salloum, who reported that Plaintiff had an easily reducible ventral hernia in the midline of her abdomen which was getting larger. T.265. Dr. Salloum recommended a component

---

[2] Plaintiff sustained the ventral hernia in February 2010, after lifting a wooden table weighing more than 50 pounds while working as a catering assistant at a hotel. T.210. Plaintiff did not return to work after this incident.

separation surgery.³ On October 5, 2012, Dr. Salloum provided a functional assessment, T.270-77, in which he opined, inter alia, that Plaintiff could occasionally lift and carry 20 pounds or less. T.270.

### 2. The ALJ's Weighing of Dr. Salloum's Opinions

As noted above, Dr. Salloum issued weight restrictions of 10 pounds several times between June 2010, and February 2011, but in October 2012, Dr. Salloum stated that Plaintiff occasionally could lift and carry up to 20 pounds. The ALJ stated that he "accord[ed] great weight to Dr. Salloum's opinion on the claimant's 10-pound lifting restriction because he has longitudinal and detailed knowledge of the claimant's impairment." T.57. Later in the decision, the ALJ stated that he was according "only partial weight" to Dr. Salloum's October 2012 opinion, which the ALJ stated was "generally consistent with a light exertion capacity with additional postural and environmental limitations." T.58. Though the ALJ did not specifically state which portions of the October 2012 he was according "partial weight," the ALJ's subsequent statements suggest that he rejected Dr. Salloum's October 2012 less restrictive lifting requirements in favor of the earlier, more

---

³ On September 10, 2012, reconstructive surgeon Bryson Richards, M.D., indicated that Plaintiff needed a repair of her abdominal wall with separation of components, closure, and possible biologic mesh placement, and he recommended that she lose 10 pounds to optimize her chances for a successful surgical outcome. At the time of the hearing and administrative appeal, Plaintiff had not undergone the component surgery.

restrictive weight limitation. Specifically, the ALJ stated,

> [Dr. Salloum's] opinion in this medical source statement may reflect the claimant's functioning as of the date of his medical source statement, however it does not pertain to the entire period under consideration. The medical evidence and Dr. Salloum's opinion prior to this medical source statement shows [sic] that the claimant's [sic] was previously limited to working with 10 pounds.

T.58. Read in conjunction with the ALJ's explicit statement that he accorded "great weight" to Dr. Salloum's 10-pound weight restriction, the above-quoted statement implies that the ALJ rejected Dr. Salloum's later, less restrictive lifting restriction. However, in issuing his RFC summary statement, see T.55, the ALJ stated that Plaintiff "can only lift/carry up to 20 pounds occasionally and [sic] frequently." Id. This sentence appears to be missing words and, in any event, it does not make sense as written. The ambiguity is perpetuated in the ALJ's step five discussion, where he listed the representative jobs Plaintiff could perform; all of them were at the sedentary exertion level, which is consistent with Dr. Salloum's opinion giving a 10-pound weight restriction. The AC, on appeal, apparently assumed that the ALJ had made a mistake in reciting the VE's testimony. The AC noted that the VE had testified that a person who could lift and carry up to 20 pounds occasionally could work a number of jobs and gave several examples. The AC found that Plaintiff was not disabled because the ALJ found she had the ability to lift and carry up to 20 pounds occasionally. In reaching this conclusion, the AC

evidently ignored the ambiguities and in the ALJ's decision that the Court has discussed above.

Contrary to the Commissioner's contention, the error by the ALJ, which was compounded by the AC, was not harmless. Medical-Vocational Rule 201.14 directs a finding of "disabled" for an individual who is closely approaching advanced age (50 to 55 years-old), has a high school-level or greater education that does not provide for direct entry into skilled work, and has semi-skilled or skilled past relevant work from which skills are not transferrable. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1. Plaintiff was 49 years-old on her alleged onset date, and turned 50 years-old on October 19, 2011. Although she completed two years of college in 1979, she did not obtain a degree, and this academic work is too remote to afford her direct entry into a skilled job. Plaintiff has a history of several semi-skilled jobs, but there was no testimony as to whether she had acquired any transferrable skills from these jobs. Moreover, the ALJ's restriction of Plaintiff to performing unskilled work would render irrelevant any semi-skilled-level job skills. Had Plaintiff clearly been limited to sedentary work (as implied by the ALJ's step five analysis and his assignment of "great weight" to Dr. Salloum's 10-pound lifting restriction), Medical-Vocational Rule 201.14 would direct a finding of "disabled" as of Plaintiff's 50th birthday, October 19, 2011.

    **3.   Remand is Required.**

Remand accordingly is required on several grounds. First, remand is necessary in order for the ALJ to clarify the ambiguities in his decision, which have been set forth in the preceding paragraphs of this opinion. As noted, Dr. Salloum, who clearly is a treating physician, issued opinions with different weight restrictions. In the body of his decision, the ALJ explicitly gave "great weight" to Dr. Salloum's 10-pound lifting restriction and rejected Dr. Salloum's October 2012 opinion that Plaintiff could lift and carry up to 20 pounds occasionally; however, the RFC summary statement is ambiguous and does not appear to reflect that. The ALJ's step five discussion also is ambiguous because it states that Plaintiff can perform representative jobs at the sedentary exertion level, but the RFC given is light work with some postural and non-exertional limitations. The ALJ is directed to provide clarification of his reasoning in assigning different weights to Dr. Salloum's various opinions. The ALJ also is directed to clarify Plaintiff's lifting and carrying restriction in the RFC. With regard to Dr. Salloum's October 2012 opinion afforded "partial weight," the ALJ is requested to clarify which portions of that opinion he is accepting, which portions he is rejecting, and why. In addition, the ALJ did not address any of the factors required by the Commissioner's regulations to be evaluated when assigning less than controlling weight to a treating source's opinion. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (If the ALJ

gives the treating physician's opinion less than controlling weight, he must specify "good reasons" by reference to the following factors: length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the other medical evidence, specialization of the treating physician, and other factors that are brought to the attention of the court.) (citing 20 C.F.R. § 404.1527(d)(1)-(6)).

Finally, the Commissioner's regulations require that the ALJ include in his RFC assessment a "function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." Zurenda v. Astrue, No. 11-CV-1114(MAD/VEB), 2013 WL 1183035, at *4 (N.D.N.Y. Mar. 1, 2013), R&R adopted, 2013 WL 1182998 (N.D.N.Y. Mar. 21, 2013). The current RFC is lacking such a function-by-function assessment. Therefore, on remand, the ALJ is directed to provide a function-by-function assessment of Plaintiff's "ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." Id. (citing 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y. 1999)).

**B. Insufficient Credibility Determination (Plaintiff's Point III)**

The Commissioner's regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.

Here, the ALJ completed the first step inasmuch as he determined that Plaintiff suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. See 20 C.F.R. § 404.1529(b).

At the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record, and in particular must examine "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a). The ALJ's decision must contain "specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186, *4 (S.S.A. 1996). However, the ALJ simply found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not fully supported by the substantial evidence of record." T.56. The ALJ gave no further explanation regarding his credibility finding apart from simply reciting Plaintiff's testimony and summarizing the

record evidence. See T.55-57. Because the ALJ did not detail the basis for his credibility assessment with respect to Plaintiff's alleged symptoms, "it is impossible for the Court to conduct a meaningful review of her findings at Step Four to determine whether they are supported by substantial evidence." Alcantara v. Astrue, 667 F. Supp.2d 262, 278 (S.D.N.Y. 2009) (citing Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988); other citation omitted). Accordingly, the case must be remanded for the ALJ to provide more detailed reasons for her credibility determination, taking into consideration the factors set forth in 20 C.F.R. § 404.1529(c)(3). Id.; see also Lewis v. Apfel, 62 F. Supp.2d 648, 658 (N.D.N.Y. 2009).[4]

### C. Incomplete Hypothetical Presented to VE (Plaintiff's Point IV)

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998). If the ALJ relies on an outside expert, there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712

---

[4] Furthermore, the ALJ failed to take into account Plaintiff's apparently good work record. See 20 C.F.R. § 404.1529(c)(3) (ALJ "will consider . . . information about [the claimant's] prior work record"); SSR 96-7p, 1996 WL 374186, at *5 (credibility determinations should take account of claimant's "prior work record"). The Second Circuit has observed that "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Here, it appears that Plaintiff had a good work history, since she had sufficient quarters of coverage to remain insured through December 31, 2015. T.51.

F.2d 1545, 1554 (2d Cir. 1983). "A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability." Karabinas v. Colvin, 16 F. Supp.3d 206, 221 (W.D.N.Y. 2014) (citing DeLeon v. Sec'y of Health and Human Servs., 734 F.2d 930, 936 (2d Cir. 1984)). Because the Court has found ambiguities and inconsistencies in the ALJ's discussion of treating physician Dr. Salloum's opinions and in the RFC assessment, the ALJ's hypotheticals to the VE necessarily were affected. Accordingly, the ALJ will need to revisit step five in light of the RFC findings made upon remand. Any VE testimony should be based on hypothetical questions that accurately state Plaintiff's limitations and RFC.

**VII. Conclusion**

For the reasons discussed above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted to the extent the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with the instructions in this Decision and Order. In particular, the Commissioner is directed to clarify the weights assigned to Dr. Salloum's opinions, giving consideration to the required regulatory factors; provide a function-by-function assessment of Plaintiff's ability to perform the seven work-related physical activities; re-evaluate Plaintiff's RFC and clarify her lifting and carrying restrictions; re-evaluate

Plaintiff's credibility in light of the required regulatory factors; clarify his step five discussion; and re-formulate hypotheticals for the VE, if necessary. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 4, 2015
         Rochester, New York.